```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/14/2012
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CYNTHIA L. McGINNIS,

                Plaintiff,

-against-

NEW YORK UNIVERSITY MEDICAL CENTER,

                Defendant.
------------------------------------------------------------X

09 Civ. 6182 (RMB)

**OPINION & ORDER**

    Having reviewed the record herein, including, without limitation, **(i)** Cynthia McGinnis's ("Plaintiff" or "McGinnis") second amended complaint, filed March 8, 2010, alleging, among other things, that New York University Medical Center ("Defendant" or "NYU") discriminated against her by failing to promote her and firing her because she is African-American and retaliated against her by terminating her employment after she filed suit, in violation of 42 U.S.C. § 1981 and New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq.; **(ii)** the Court's Decision & Order, dated August 24, 2012, granting summary judgment in favor of Defendant with respect to Plaintiff's failure-to-promote claim and discriminatory discharge claim and denying summary judgment with respect to Plaintiff's retaliation claim (Decision & Order, dated October 24, 2012, at 6, 19); **(iii)** Defendant's motion for reconsideration of the August 24, 2012 Decision & Order, filed September 27, 2012 pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and Local Rule 6.3 (Def.'s Mem. of Law in Supp. of Mot. for Reconsideration, dated Sep. 26, 2012 ("Def. Mem.")); **(iv)** Plaintiff's opposition, filed October 11, 2012 (Pl.'s Mem. of Law in Opp'n to Def.'s Mot., dated Oct. 8, 2012 ("Pl. Opp'n)); **(v)** Defendant's reply, filed October 17, 2012 (Def.'s Resp. to Pl.'s Mem. of Law in Opp'n to Mot. for Relief, dated Oct. 17, 2012 ("Def. Reply")); and **(vi)** applicable legal authorities, including, without limitation,

Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87 (2d Cir. 2001), and its progeny, **the Court hereby grants Defendant's motion for reconsideration as follows:[1]**

**Standard for Reconsideration**

Local Rule 6.3 permits a party to move for reconsideration based on "matters or controlling decisions which counsel believes the court has overlooked." S.D.N.Y. Local R. 6.3. Motions for reconsideration will be granted where "the moving party can point to controlling decisions or data that the court overlooked." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration must be granted "to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 2003).

**Plaintiff's Retaliation Claim**

Defendant argues that Plaintiff failed to establish a prima facie case of retaliation because "McGinnis' supervisors repeatedly criticized her work performance well before they became aware of her lawsuit," on or about July 15, 2009 and where, as here, serious work-related reprimands/discipline occurred "on a regular basis" before the Plaintiff filed a discrimination lawsuit, there can be no retaliation. (Def. Mem. at 5, 6, 7) (citing Slattery, 248 F.3d at 95; Deebs v. Alstom Transp., Inc., 246 F. App'x 654, 657–58 (2d Cir. 2009)) (emphasis in original). Plaintiff argues that she was never disciplined, that NYU did not "diminish her job responsibilities," and she "can demonstrate a clear escalation of negative feedback following the filing of her Complaint" on July 9, 2009. (Pl.'s Opp'n at 8.)

"In order to make out a prima facie case of retaliation, a plaintiff must show by a preponderance of the evidence [1] participation in a protected activity known to the defendant;

---

[1] The parties agreed to have this motion be decided "on submission." (Hr'g Tr., dated Sep. 12, 2012, at 3:2–3).

2

[2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." Holt v. KMI-Continental, Inc., 95 F.3d 123, 130 (2d Cir. 1996) (citation omitted). "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 95 (2d Cir. 2001).

The evidence and case law fully support reconsideration and Defendant's claim that "because McGinnis's supervisors' criticisms of her work occurred 'on a regular basis' well before her lawsuit, there is no causal connection between her lawsuit and the performance criticisms at issue." (Def. Memo. at 7.) That is, beginning almost three years before she filed her discrimination lawsuit on July 9, 2009, Plaintiff was reprimanded repeatedly for failure to complete projects on time, excessive absences, faulty work product, falsification of time sheets, and inappropriate conduct with a coworker. See infra pp. 3–5. Defendant warned Plaintiff that if her performance did not improve, she faced further discipline, including termination. (See, e.g., Decl. of Kathryn E. White, Esq. in Sup. of Def.'s Mot. for Summ. J. and for Leave to Amend its Answer to Assert an Additional Affirmative Defense Based on the After-Acquired Evidence Doctrine ("White Decl."), Ex. 42) (failure to "immediately show improvement and sustain a satisfactory attendance record . . . will result in further disciplinary action up to and including suspension and/or termination of employment.")

The record demonstrates that before McGinnis filed her discrimination suit, NYU reprimanded (and disciplined) her repeatedly for performance issues, including, but not limited to, the following:

- On November 1, 2006, McGinnis's supervisors met with her concerning the fact that "the quantity and quality of [her] work performance" had become "substandard and

present[ed] a growing concern for the administrative office, and the Environmental Medicine Department." (White Decl., Ex. 9.) Plaintiff was said to have failed to complete important projects "in a timely manner," often spent a "majority of the workday away from [her] desk," and falsified her time sheets to indicate that she was working during times when was not in the office. Id. On November 1, 2006, Plaintiff received a "formal Written Warning" in her personnel file and was cautioned that continued substandard performance "will result in further disciplinary action up to and including termination." Id.

- On October 6, 2008, McGinnis's supervisors met with her to discuss her failure to complete assigned tasks. (White Decl., Ex. 33.) The upshot was that she was stripped of various job responsibilities relating to the submission and monitoring of grant applications and assigned several new, more administrative tasks such as "sorting all mail" and "all administrative filing" in their stead. Id.

- In February and April 2009, McGinnis's supervisors emailed her regarding mistakes in her placement of orders and complaints from faculty members regarding the delay in receiving ordered items. (White Decl., Ex. 34) ("I received another complaint this afternoon from Dr. Wirgin regarding the delay of another order which resulted in a member of his staff not being able to work for 3 days.") In fact, McGinnis acknowledged that she was receiving "complaints [about her workplace performance] on a regular basis." Id. Plaintiff was warned that she needed "to better manage [her] time, not come up with excuses." Id. In the April 17, 2009 email, McGinnis's supervisor attached the language of the October 6, 2008 email and reiterated that McGinnis's job responsibilities had changed. Id.

- On March 6, 2009, McGinnis's supervisors met with her regarding the excessive number of sick days that she took in 2008 and the "obvious . . . pattern" of those sick days, which almost always fell on Mondays. (White Decl., Ex. 35.) McGinnis was given a copy of the NYU policy on excessive absenteeism and a copy of her time sheets. Id.

- On June 5, 2009, McGinnis received a revised version of an April 28, 2009 written memorandum regarding inappropriate interaction with another employee. (White Decl., Ex. 41.) ("Your position does not allow you the authority or the expertise to engage in matters regarding employee relations issues.") The revised memo warned of "further disciplinary action" if her conduct continued. Id.

- On July 8, 2009, McGinnis's supervisors exchanged a draft of a "counseling memorandum" noting that her job performance was "inferior," reminding her that her job responsibilities had been altered in October 2008, discussing complaints from faculty and staff about errors in order placement and untimely placement of orders, and detailing specific instances of poor performance and untimeliness in the completion of special projects such as the "space survey project," the update of the "staff email and telephone list" for the Department website, and the "new recruit checklist." (White Decl., Ex. 43) (Def. Mem. at 6.) The memo advised that "it is expected that you will make an immediate and sustained improvement" and "continued occurrence of poor job

4

- performance will result in further disciplinary action up to and including termination." Id.

- On July 9, 2009, McGinnis was issued a "written warning for substandard attendance." This memorandum referenced the previous warning for "excessive sick leave" on March 6, 2009 and noted that "[t]o date your attendance record has not improved." (White Decl., Ex. 42.) Plaintiff was cautioned that a failure to "immediately show improvement and sustain a satisfactory attendance record . . . will result in further disciplinary action up to and including suspension and/or termination of employment."[2] Id.

Thus, as Defendant points out, Plaintiff's claim that she was never "placed . . . on any form of progressive discipline" and that NYU did not "diminish her job duties . . . before she filed her Complaint" is simply not supportable. (Pl. Opp'n at 8) (Def. Reply at 7.) The record demonstrates she was disciplined repeatedly and that her job responsibilities were changed in October 2008. (White Decl., Ex. 33.); See Slattery, 248 F.3d at 95 (noting "an extensive period of progressive discipline" which began when the defendant diminished Slattery's job responsibilities five months prior to his filing EEOC charges). These changes in responsibility were presented to her orally and in writing on at least two occasions—in April 2009 and early July 2009. Plaintiff was "written up" multiple times and warned of potential "further disciplinary action up to and including termination." (White Decl., Exs. 9, 41, 42, 43.)

Because Plaintiff's basis for her claim of retaliation is the timing between the filing of her complaint on July 9, 2009 and her termination on February 1, 2010 and because she was subject to "an extensive period of progressive discipline" prior to the filing of her complaint, she has failed to make out a prima facie case of retaliation. See Slattery, 248 F.3d at 95; Dixon v. Int'l Fed'n of Accountants, 09-cv-2839, 2010 WL 1424007, at *6 (S.D.N.Y. Apr. 9, 2010) ("[Plaintiff] was subjected to repeated critiques and complaints about her management and

---

[2] Plaintiff filed her lawsuit on July 9, 2009. Defendant contends (and Plaintiff offers no objection) that it was not made aware of the lawsuit until it was served on July 15, 2009. (Def. Mem. at 7.)

performance skills before she ever lodged any complaints about discrimination and, as such, her retaliation claim must be dismissed."); Wright v. New York City Off-Track Betting Corp., 05-cv-9790, 2008 WL 762196, at *5 (S.D.N.Y. March 24, 2008) ("If an employer's conduct before and after an employee complaint is consistent, the post-complaint conduct is not retaliatory."). [3]

Since Defendant prevails on its argument that Plaintiff's retaliation claim should (also) be dismissed, Defendant's further grounds for reconsideration need not be considered and Defendant's after-acquired evidence defense is moot. See Deutsche Bank Sec., Inc. v. Rhodes, 578 F. Supp. 2d 652, 669 (S.D.N.Y. 2008) (dismissing the claims against the Defendant and rendering his defenses moot); Rivera v. Goord, 253 F. Supp. 2d 735, 757 (S.D.N.Y.2003) (holding that the grant of summary judgment rendered Defendant's qualified immunity defense moot).

---

[3] Several district courts in this circuit have found Slattery inapplicable in retaliation cases where, unlike this case, adverse actions post-dating protected activity were not part of a pre-protected activity discipline progression. See Phillip v. City of New York, No. 09-cv-442, 2012 WL 1356604, at *16 (E.D.N.Y. April 19, 2012) (where the "quantity and tenor of warnings and disciplinary letters changed significantly"); Cooper v. New York State Nurses Assoc., 847 F. Supp. 2d 437, 449 (E.D.N.Y. 2012) (where the termination letter stated that the dismissal was based on actions that took place after the protected activity); Mugavero v. Arms Acres, Inc., No. 03-cv-05724, 2009 WL 890063, at * 12 (S.D.N.Y. March 31, 2009) (there was no "continuous progression of discipline"); Gordon v. Health & Hosps. Corp., No. 06-cv-1517, 2008 WL 924756, at *11 n. 16 (E.D.N.Y. March 31, 2008) (where "[A]lmost four years passed without incident prior to the events that eventually lead [sic] to this action.").

**Conclusion & Order**

For the foregoing reasons, Plaintiff's motion for reconsideration [#67] is granted. The Clerk of the Court is respectfully requested to enter judgment in favor of the Defendant. The Clerk is further requested to close this case.

Dated: New York, New York
November 14, 2012

*/s/ RMB*

RICHARD M. BERMAN, U.S.D.J.